# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TAMMY S.[1],  
     Plaintiff,

    vs.

COMMISSIONER OF  
SOCIAL SECURITY,  
     Defendant.

Case No. 1:21-cv-446

Litkovitz, M.J.

**ORDER**

Plaintiff, Tammy S., brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB).  This matter is before the Court on plaintiff's statement of errors (Doc. 16), the Commissioner's response in opposition (Doc. 19), and plaintiff's reply memorandum (Doc. 20).

## I.  Procedural Background

Plaintiff filed her application for DIB in June 2019, alleging disability since December 17, 2018, due to back issues with past surgery, a congenital hip problem, neck pain that radiates down her left arm, depression and anxiety.  (Tr. 289).  The application was denied initially in January 2020, and upon reconsideration in September 2020.  (Tr. 188-204).  Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Renita K. Bivins on February 4, 2021.   Plaintiff appeared and testified at the ALJ hearing via telephone.  (Tr. 64-95).  A vocational expert (VE) also appeared and testified at the hearing.

---

[1] Pursuant to General Order 22-01 due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

(*Id.*). On April 1, 2021, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 38-62).[2] The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

---

[2] The administrative record contains two copies of the ALJ's decision. The Court will refer to the second, more legible copy found at Doc. 10 (Tr. 38-62).

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2024.

2. [Plaintiff] has not engaged in substantial gainful activity since June 21, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Plaintiff] has the following severe impairments: disorder of back, mild osteoarthritis bilateral hips, greater trochanteric bursitis bilateral hips, and obesity (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, [the ALJ] finds that the

3

[plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently; is able to stand and/or walk six hours per 8-hour day and sit for six hours per 8-hour day with normal breaks. [Plaintiff] can frequently climb ramps and stairs but can never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch and crawl. [Plaintiff] is limited to occasional overhead reaching bilaterally. She must avoid all exposure to hazards such as unprotected heights of ladders, ropes, or scaffolds and heavy moving machinery.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[3]

7. [Plaintiff] . . . was 51 years old, which is defined as an individual closely approaching advanced age on the alleged disability onset date (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569a).[4]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from June 21, 2019, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 43-58).

---

[3] Plaintiff's past relevant work was a composite job of laborer of stores, an unskilled, medium exertion position; and a forklift operator and an inventory clerk, both semi-skilled, medium exertion positions. (Tr. 56, 88-89).

[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as bagger (40,000 jobs nationally), marker (30,000 jobs nationally), and produce weigher (40,000 jobs nationally). (Tr. 57, 90).

**C.**     **Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a [plaintiff] on the merits or deprives the [plaintiff] of a substantial right."  *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

5

**D.      Relevant Medical Evidence**

*1.      Treatment*

Plaintiff met with neurosurgeon, Jonathan Borden, M.D., on August 22, 2018, complaining of lower back pain and numbness in her right leg.  (Tr. 400).  Plaintiff reported that she had received physical therapy and epidurals without relief.  Dr. Borden assessed spinal stenosis at L4-L5 level, lumbar degenerative disc disease, and bilateral hip pain.  He recommended continuation of a physical therapy program to strengthen her core.  (Tr. 403).

In August 2018, an MRI of the lumbar spine showed degenerative changes at L5-S1 and other mild degenerative changes.  (Tr. 409-10).  An October 24, 2018 lumbar myelogram showed extradural defects along the ventral aspect of the thecal sac, most prominent at L3-L4, consistent with disc protrusion as well as thoracolumbar scoliosis.  (Tr. 429-30).  A post-myelogram CT of plaintiff's lumbar spine revealed multilevel discogenic degenerative changes, with a mild degree of acquired central spinal stenosis at L3-L4 and minimal degree of central spinal stenosis at L4-L5, secondary to a diffuse disc protrusion.  (Tr. 433).

In December 2018, plaintiff underwent a right L5 hemilaminectomy, L5-S1 medial facetectomy, and foraminal discectomy to address her disc herniation and nerve root compression.  (Tr. 454).  In early March 2019, plaintiff was cleared to full work duty.  (Tr. 463).  At that time, she worked as a night shift stocker which required considerable bending, lifting, pushing, and pulling heavy objects.  (*Id.*).

At plaintiff's March 2019 primary care examination, she reported continued numbness in the anterior lateral thigh and right buttocks area with stiffness and pain in her low back and

anterior groin. (Tr. 469). Plaintiff indicated she had taken naproxen and other anti-inflammatories in the past, but she could not remember how much they had helped as she had not taken them "in a while." (*Id.*). On examination, plaintiff demonstrated significant tenderness to the lumbar paraspinal musculature, significant stiffness to lumbar flexion and side bending, and rotation tenderness with facet testing. (Tr. 470). Examination revealed no evidence of sensory or motor deficits, and she exhibited full coordination and symmetric reflexes. (*Id.*). Her hip x-ray showed mild bilateral osteoarthritis with no evidence of acute fracture or dislocation. (Tr. 470-71).

A July 2019 MRI of plaintiff's lumbar spine revealed an L5-S1 right hemilaminectomy with shallow foraminal disc protrusion contacting the foraminal right L5 nerve root; L4-L5 trace retrolisthesis, listhesed disc with annular fissure, and mild spinal stenosis; and L3-L4 shallow disc bulge with mild spinal stenosis. (Tr. 599).

On January 14, 2020, plaintiff sought help from Aarti Singla, M.D., an orthopedic surgeon, to address her low back and right leg pain. Plaintiff reported progressive pain in her low back and hips and numbness in her right leg, exacerbated by prolonged sitting, driving, or walking. She indicated that she could not walk more than 20 minutes without taking a break due to pain, but she did not require an assistive device to ambulate. (Tr. 489). On examination, plaintiff's cervical range of motion was limited by 25% in all planes due to pain. Her strength was 5 of 5 in all muscle groups tested with normal lumbar alignment and stability. Plaintiff demonstrated mild paraspinal tenderness at L4-L5 and bursal tenderness without spasm. Her straight leg raise and crossed straight leg raise tests were negative with normal reflexes. (Tr.

491-492). Dr. Singla assessed greater trochanteric bursitis of both hips, degenerative disc disease of the lumbar spine, and lumbar foraminal stenosis. (Tr. 494). After discussing her options, plaintiff elected to pursue medications and greater trochanter bursa injections. (*Id.*).

A lumbar spine MRI taken on November 20, 2020, showed moderate right foraminal stenosis at L5-S1, broad based disc protrusion at L4-S1 and right disc protrusion at L1-L2. (Tr. 585-86). On December 8, 2020, Sambhu Choudhury, M.D., noted that plaintiff continued to have bilateral hip pain with radiation to her right calf. She reported that Dr. Singla's bursal injections did not relieve her pain but caused side effects that included hallucinations. (Tr. 623). Dr. Choudhury instructed plaintiff to engage in physical therapy to strengthen her core and reduce stiffness in her lumbar region; utilize a sacroiliac brace, especially at work; and take cymbalta, gabapentin and diclofenac as needed for pain. (Tr. 627).

### 2. *Functional Capacity Evaluation (FCE) - Cynthia Lear, P.T.*

On September 13, 2019, Cynthia Lear, Physical Therapist, completed a functional capacity evaluation of plaintiff. (Tr. 481). The evaluation took one hour and fifteen minutes. (*Id.*). According to Lear's report, plaintiff can sit for 10 to 15 minutes at one time; can stand 5 to 10 minutes at one time without needing to sit or walk; must walk every 10 or 15 minutes for 5 or 6 minutes; must be able to shift positions at will and take frequent, unscheduled breaks for 5 to 10 minutes; can rarely lift 10 pounds or less; can never lift 20 pounds or more; can occasionally look down, turn head right or left, look up, and hold head in static position; can never crouch or climb ladders; can rarely twist, stoop, or climb stairs; and can reach, handle or finger without significant limitations. (Tr. 478-480).

Ms. Lear reported that plaintiff put forth full and consistent effort during the testing, and she estimated that plaintiff would miss work an average of 4 days per month. (Tr. 480-481). Ms. Lear concluded that plaintiff would have difficulty attaining and sustaining a work pace of activity on a day in and out basis for even part-time sedentary work. (Tr. 481).

    *3.  State Agency Review*

  State agency physician, Indira Jasti, M.D., reviewed plaintiff's file upon reconsideration in May 2020[5] and found that plaintiff was capable of light exertional work and limited plaintiff to never climbing ladders, ropes, and scaffolds; frequently climbing ramps/stairs; and occasionally stooping, kneeling, couching or crawling. Dr. Jasti also determined plaintiff should only occasionally reach overhead due to limited cervical range of motion and chronic neck pain. (Tr. 202). Plaintiff was precluded from working at unprotected heights and with heavy machinery. (Tr. 203).

  **E.  Specific Errors**

  Plaintiff asserts in a single assignment of error that the "ALJ reversibly erred in evaluating the medical and opinion evidence and [plaintiff]'s RFC." (Doc. 16 at PAGEID 713). Specifically, plaintiff alleges that the ALJ nitpicked perceived "inconsistencies" in the opinion of physical therapist Cynthia Lear and failed to properly consider Lear's findings as they pertain to the comprehensive 1.25-hour physical examination she performed. (*Id.*). The Commissioner counters that the ALJ appropriately considered the relevant objective medical and opinion

---

[5] State agency physician, James Greco, M.D., reviewed plaintiff's file in January 2020, and determined that plaintiff's physical impairments were not severe because there was insufficient evidence to assess the effect of her impairments on her functional capacity. (*See* Tr. 194).

evidence and determined that while plaintiff had physical limitations affecting her work-related functioning, she was not disabled. (Doc. 19 at PAGEID 729-734).

**F. The ALJ's Evaluation of the Physical Therapist's Opinion is Supported by Substantial Evidence.**

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. §§ 404.1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[6] *Id.* The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[7], including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and

---

[6] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[7] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[8] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

Plaintiff contends the ALJ's evaluation of physical therapist Cynthia Lear's opinion is not supported by substantial evidence because the ALJ "nitpicked perceived 'inconsistencies'" in her opinion and failed to "properly consider" her "comprehensive 1.25-hour physical examination."

---

[8] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

(Doc. 16 at PAGEID 713).  The Commissioner responds that the ALJ properly considered Ms. Lear's opinion in conjunction with the other medical evidence of record and reasonably found it "minimally persuasive."  (Doc. 19 at PAGEID 732).  As required by 20 C.F.R. § 404.1520c(b)(2), the ALJ properly considered supportability and consistency in finding Ms. Lear's opinion "minimally persuasive."

    *1. Supportability*

   Plaintiff contends that Ms. Lear's observations of plaintiff during her examination provide support for her opinions that plaintiff would be absent from work more than four days per month and "would likely have difficulty attaining and sustaining a work pace of activity on a day in and day out basis, even in a part time sedentary position."[9]  (Doc. 16 at PAGEID 713-714 (quoting Tr. 481)).  Specifically, plaintiff cites Lear's observations that plaintiff:  appeared "to put forth full effort throughout testing"; walked slowly with hands in groin due to pain and paused twice to lean on a wall; exhibited decreased stance time on right leg and decreased right step lengths; demonstrated increased side-to-side movements and decreased hip and knee bending and straightening, especially on the right; was able to move around on her feet for intervals of 8 to 20 minutes and needed to sit due to pain; and perspired after climbing stairs and while she worked standing forward flexed.  (Doc. 16 at PAGEID 713 (quoting Tr. 481)).

   Ms. Lear saw plaintiff once, on September 13, 2019, for a seventy-five minute evaluation and completed a Physical Residual Functional Capacity Questionnaire.  (Tr. 477).  For 11 of the

---

[9] Physicians render opinions on a claimant's RFC, but the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner.  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 578 (6th Cir. 2009)).

questions on the questionnaire, Ms. Lear wrote simply "refer to physician." (Tr. 477-480). Ultimately, Ms. Lear opined that plaintiff would be absent from work more than 4 days per month and would be unable to sustain a work pace of activity on an ongoing basis. (Tr. 480, 481).

As an initial matter, the ALJ reasonably concluded that Ms. Lear's opinion that plaintiff was "not likely to sustain employment" "even in a part-time sedentary position" (Tr. 55, citing Tr. 481) amounts to an issue reserved to the Commissioner based on Social Security rules and regulations. Whether a person is disabled within the meaning of the Social Security Act, i.e., unable to engage in substantial gainful activity, is an issue reserved to the Commissioner, and a medical source's opinion that her patient is "disabled" or "unable to work" is not "giv[en] any special significance." 20 C.F.R. § 404.1527(d)(3). *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (opinion by medical source on issues reserved to Commissioner is never entitled to controlling weight or special significance); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Therefore, the ALJ reasonably found that Ms. Lear's opinion that plaintiff would be unable to sustain employment is not persuasive.

As the ALJ also accurately noted, Ms. Lear offered no explanation in support of her conclusions. (Tr. 55, 480). The letter included with the questionnaire reports her observations of plaintiff performing activities such as walking, ascending and descending stairs, sitting, working while forward flexed, and picking up an object from the floor. (Tr. 483). Plaintiff was able to complete the activities requested with varying degrees of difficulty, but Ms. Lear failed to tie any of those observations to her assertion that plaintiff would be absent from work more than 4 days

per month or unable to sustain even a sedentary work pace. In *Wagers v. Comm'r of Soc. Sec.*, the court found no way to tell from the form opinion submitted whether the physician completing it had reached the conclusion on absences because of plaintiff's pain, doctors' appointments, medication side effects, or some other reason. No. 1:15-cv-312, 2016 WL 4211811, at *7 (S.D. Ohio June 28, 2016), *report and recommendation adopted*, 2016 WL 4194504 (S.D. Ohio Aug. 9, 2016). The ALJ's finding that Ms. Lear's opinion failed to include any justification or records to support "this excessive degree of absenteeism" (Tr. 55) is substantially supported.

Similarly, Ms. Lear noted that plaintiff picked up an object from the floor "slowly flexing forward [with] light hand on support." (Tr. 483). Yet, she concluded in the next sentence—again, without any explanation or discussion—that plaintiff "would not be functional in a work setting" with regard to squatting, crouching, or kneeling. (*Id.*).

Finally, Ms. Lear relied almost entirely on plaintiff's self-reports concerning her prior medical treatment, the restrictions her physician imposed (none), and her symptoms. (Tr. 482). Without objective medical evidence and supporting explanations, the ALJ properly considered the supportability factor and found Ms. Lear's opinion "minimally persuasive."

### 2. Consistency

Plaintiff next contends that the ALJ "nitpicked" inconsistencies between Ms. Lear's opinions, plaintiff's self-reported activities, and other medical evidence in the record. (Doc. 16 at PAGEID 713-714). Specifically, plaintiff claims that Ms. Lear's opinions are consistent with October 2018 imaging that revealed defects consistent with disc protrusions; a June 15, 2019 physical examination at which plaintiff walked with a limp, experienced significant tenderness to

14

the lumbar paraspinal musculature, stiffness to lumbar flexion and side bending, rotation

tenderness with facet testing, and increased hamstring tightness; a November 22, 2020 MRI

which revealed right foraminal and broad-based central disc protrusions with moderate right

foraminal stenosis at L5-S1; and a December 2020 examination at which plaintiff continued to

walk with a limp, exhibit significant tenderness to the lumbar paraspinal musculature, stiffness to

lumbar flexion and side bending, rotation tenderness with facet testing, and increased hamstring

tightness. (Doc. 16 at PAGEID 714-715).

Generally, "[t]he more consistent a medical opinion(s) . . . is with the evidence from

other medical sources and nonmedical sources in the claim, the more persuasive the medical

opinion(s). . . will be." 20 C.F.R. § 404.1520c(c)(2). In this case, the ALJ found Ms. Lear's

opinion both internally inconsistent and inconsistent with other evidence in the record. (Tr. 54-

55).

As for internal inconsistencies, Ms. Lear opined that plaintiff can sit only 10 to 15

minutes at one time and stand for 5 to 10 minutes at one time. (Tr. 478). She also indicated that

plaintiff must walk for 5 or 6 minutes every 10 to 15 minutes. (Tr. 479). Yet, during Ms. Lear's

examination, plaintiff sat for more than 20 minutes at a time (Tr. 483) and self-reported that she

could sit for 25 minutes at a time (Tr. 482). In addition, Ms. Lear opined that plaintiff could only

rarely lift 10 pounds or less (Tr. 479), but as the ALJ reasonably noted, plaintiff self-reported the

ability to lift 10 to 15 pounds (Tr. 55, 482). Ms. Lear also concluded that plaintiff could only

occasionally look down, look up, turn her head left or right, or hold her head in a static position.

(Tr. 479). The ALJ found this opinion inconsistent with plaintiff's self-reports to the

consultative examiner as recently as August 26, 2020, that she is able to drive and manage her own grooming and hygiene "without significant difficulty." (Tr. 55, 557). Finally, the ALJ reasonably noted that Ms. Lear's opinion that plaintiff could never crouch or squat and only rarely bend (Tr. 480) was inconsistent with plaintiff's self-reported ability to perform light housekeeping, including cleaning the toilet and bathtub (Tr. 55, 482).

As for consistency with other medical evidence, the October 2018 imaging on which plaintiff relies (Doc. 16 at PAGEID 714, citing Tr. 430) occurred preoperatively to plaintiff's December 2018 right L5 hemilaminectomy, L5-S1 medial facetectomy, and foraminal discectomy (Tr. 454). Plaintiff correctly notes that the June 15, 2019 and December 8, 2020 physical examinations contain information consistent with Ms. Lear's findings in that plaintiff walked with a limp, experienced significant tenderness to the lumbar paraspinal musculature, stiffness to lumbar flexion and side bending, rotation tenderness with facet testing, and increased hamstring tightness. (Tr. 468, 626). However, those same examinations also produced information inconsistent with Ms. Lear's opinion. Specifically, plaintiff required no assistive devices to ambulate; inspection revealed no swelling, ecchymosis, or obvious deformity; lumbar flexion was within normal limits; there was no neurological deficit to bilateral motor and sensory exam; hip flexor strength rated 4 of 5; cervical range of motion was within normal limits; there was "no evidence for sensory or motor deficits in the extremity"; plaintiff demonstrated full coordination with no spasticity or rigidity; and x-rays taken previously revealed "mild bilateral hip osteoarthritis" with "[n]o evidence of acute fracture dislocation" and "no obvious changes of the bony back." (Tr. 467-468, 626). The November 22, 2020 MRI on which plaintiff relies

16

revealed moderate right foraminal stenosis at L5-S1 but no significant stenosis or nerve root compression in other areas.  (Tr. 587-588).

Where, as here, the record contains evidence that is both consistent and inconsistent with a medical opinion, the Court is not free to substitute its judgment for the ALJ's "if the evidence could reasonably support the conclusion reached."  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999).  "[T]he ultimate findings of the ALJ 'are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.'" *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).  "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts."  *Id.* (quoting *Blakley*, 581 F.3d at 406) (alteration in original).

The ALJ examined the consistency and supportability of Ms. Lear's opinion as required by 20 C.F.R. § 404.1520c(c) and reasonably found Ms. Lear's opinion "minimally persuasive." (Tr. 54-55).  The ALJ's evaluation of the opinion is supported by substantial evidence, and plaintiff's assignment of error is overruled.

### G.     The ALJ's Consideration of Plaintiff's Symptom Severity and Residual Functional Capacity (FRC) are Supported by Substantial Evidence.

Although couched as a single assignment of error, plaintiff also contends that the ALJ's RFC finding is not supported by substantial evidence because the ALJ improperly discounted plaintiff's symptom severity based on her ability to perform certain activities of daily living. (Doc. 16 at PAGEID 715-716) (citing *Rogers*, 486 F.3d at 248-249).  The Court disagrees.

17

ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record."  SSR 16-3p, 2016 WL 1119029, at *2.  ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's statements about his or her symptoms.  *See, e.g.*, *Rogers*, 486 F.3d at 246-49.  In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character. . . ."  SSR 16-3p, 2016 WL 1119029, at *1 (March 16, 2016) (rescinding and superseding SSR 96-7p).  To avoid such mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's subjective description of symptoms with the record.  *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation.  The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms.  SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003).  Step two of symptom evaluation shifts to the severity of a claimant's symptoms.  The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities.

18

*See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your

19

ability to work solely because the available objective medical evidence does not substantiate your statements.").  Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9.  *See also id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record").

At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).  Further, the ALJ's determination regarding the consistency of a claimant's subjective complaints with the record evidence is "to be accorded great weight and deference. . . ."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of H.H.S.*, 818 F.2d 461, 463 (6th Cir. 1987)).[10]

In this case, the ALJ properly concluded that the record here contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce plaintiff's symptoms.  (Tr. 49).  Neither party challenges that finding.

---

[10] The *Walters* court noted that substantial deference was appropriate due in large part to an ALJ's unique observation of a witness's "demeanor and credibility."  With the elimination of the term "credibility" in SSR 16-3p, it is questionable whether an ALJ's observations should be given any deference.  At least one Sixth Circuit decision subsequent to the enactment of SSR 16-3p, however, has retained the notion of deference to the ALJ in the symptom-consistency context.  *See, e.g., Lipanye*, 802 F. App'x at 171 ("It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements.").

The next step requires the ALJ to consider the intensity and persistence of the symptoms to determine the extent to which those symptoms limit plaintiff's ability to perform work-related activities.  *See* 20 C.F.R. §§ 404.1529(a) and (c).  Plaintiff argues that the ALJ overemphasized her ability to drive, perform light housekeeping, and tend to her own personal care needs in determining that she could perform light exertion work, thereby undermining the RFC finding. (Doc. 16 at PAGEID 715-716).

While the ALJ included an unusually long discussion of the abilities required to drive a car, the ALJ also cited to objective medical evidence and plaintiff's self-reports in concluding that plaintiff's statements about the intensity and limiting effects of her symptoms "are not entirely consistent with her reported abilities."  (Tr. 54).  For example, Dr. Singla's January 14, 2020 examination revealed no cervical misalignment or instability; no paraspinal tenderness or spasm; 5 of 5 strength testing in all muscle groups; and negative straight leg raise testing, Patrick's testing, FADDIR's testing, Spurling's testing, and Hoffman's testing.[11]  (Tr. 491-492). Similarly, plaintiff's December 18, 2020 nerve conduction studies "were within normal limits" and her EMG indicated a "[n]ormal electrodiagnostic study of the right lower limb" and "no

---

[11] Patrick's test (also called FABER test) involves flexion, abduction, and external rotation to diagnose pathologies at the hip, lumbar and sacroiliac region.  https://www.physio-pedia.com/FABER_Test (last visited 7/21/22). FADDIR's test involves flexion, adduction, and internal rotation to diagnose certain hip issues or labral tears. https://www.physio-pedia.com/Anterior_Labral_Tear_Test_(Flexion,_Adduction,_and_Internal_Rotation)_FADDIR_TEST?utm_source=physiopedia&utm_medium=search&utm_campaign=ongoing_internal (last visited 7/21/22).  Spurling's test (also known as maximal cervical compression test and foraminal compression test) is used to diagnose cervical nerve root compression causing cervical radiculopathy.  https://www.physio-pedia.com/index.php?title=Spurling%27s_Test&redirect=no%3Futm_source%3Dphysiopedia&utm_medium=search&utm_campaign=ongoing_internal (last visited 7/21/22).  A positive "Hoffmann's sign" suggests corticospinal tract dysfunction.  https://www.physio-pedia.com/Hoffmann's_Sign?utm_source=physiopedia&utm_medium=search&utm_campaign=ongoing_internal (last visited 7/21/22).

electrodiagnostic evidence of sacral plexopathy, lumbar radiculopathy, myopathy, or peripheral polyneuropathy." (Tr. 55, 570).

It was the ALJ's duty, and not this Court's, to weigh the conflicting evidence and assess the consistency of plaintiff's subjective complaints. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghingheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). Plaintiff correctly notes that the ability to perform daily activities may not necessarily equate to an ability to do full-time work on a sustained basis. (Doc. 16 at PAGEID 716). However, an ALJ properly considers those activities as one factor in evaluating symptom severity. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [plaintiff's] ability to conduct daily life activities in the face of his claim of disabling pain."); *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (citing 20 C.F.R. § 404.1572 and quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997)) ("Although the ability to [perform activities of daily living] is not direct evidence of an ability to do gainful work, '[a]n ALJ may . . . consider [such] activities . . . in evaluating a claimant's assertions of pain or ailments.'").

The ALJ here considered a number of factors in determining symptom severity, including plaintiff's treatment course, the objective medical evidence, plaintiff's daily activities, and clinical findings on examination. (Tr. 48-54). The ALJ's decision in this regard finds substantial support in the record, and plaintiff's assignment of error must be overruled.

22

**IT IS THEREFORE ORDERED THAT:**

Based on the foregoing, plaintiff's statement of errors (Doc. 16) is **OVERRULED**, the decision of the Commissioner is **AFFIRMED**, judgment is entered in favor of the Commissioner, and this case is **CLOSED** on the Court's docket.

Date: 8/4/2022

Karen L. Litkovitz
United States Magistrate Judge

23